(C. D. 1256)

AMERICAN WHALING COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 26, 1950)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

19

JOHNSON, Judge: This action arises by reason of the collector's assessment of a duty of 50 per centum ad valorem under the provisions of section 466 of the Tariff Act of 1930, upon the cost of certain repairs to the whale factory *Frango* incurred during a general overhauling customarily made after each whaling expedition in preparation for the next voyage. The plaintiff claims that the vessel is not documented under the laws of the United States to engage in the foreign or coasting trade, nor intended to be employed in such trade, and, therefore, it is excluded from the provisions of said section 466.

At the trial, the record in the case of *United States* v. *Western Operating Corp.*, 35 C. C. P. A. 71, C. A. D. 373, which involved repairs made upon the whale factory *Ulysses*, was admitted in evidence and made a part of the record in this case.

Four witnesses testified herein on behalf of the plaintiff, i. e., Johannes Smith, the master of the *Frango*; Clifford N. Carver, vice president and operating manager of the plaintiff; Dominick Manfredi, connected with the Marine Division of the collector's office; and James P. T. Kennedy, of the Monies and Accounts Division of the Custom House. George O'Shea, connected with the United States Administrative Office in charge of the Entrance and Clearance Section of the Marine Division, testified for the Government. Johannes Smith also testified on behalf of the Government.

The documentary evidence comprises eight exhibits. Collective exhibit 1 consists of the export declaration of the shipper of 4,017 tons of whale oil from the port of New York to Manchester, England, together with affidavits, outward foreign manifests, the oath of the master of the *Frango* on the clearance of the vessel from the port of New York, etc. Collective exhibit 2 pertains to the entrance and clearance papers of the *Frango* at the port of Baltimore, immediately prior to entering the port of New York. Collective exhibit 3 is the certificate of registry. Collective exhibit 4 is a copy of a declaration of the master as to the repairs made upon the *Frango*. Exhibit 5 is the oath of office of the incorporated company, plaintiff herein, owner of the *Frango* since August 29, 1930. Exhibit 6 consists of an ownership oath on registry of the vessel, dated December 22, 1937, the registry being listed as "Temporary." Exhibit 7 is a record of the *Frango* listing the service as "Whale Fisheries." Exhibit 8 is a record sheet of foreign clearances, dated December 24, 1937, showing that the *Frango* was cleared for Manchester, England, and Sandefjord, Norway.

The record and evidence before the court discloses the following facts: The whale factory *Frango* is owned by the American Whaling Company, Inc., and all of its officers, directors, and stockholders are American citizens. The *Frango* was specially constructed for the sole

and specific purpose of engaging in the whale fishery, a service for which she was registered and was so engaged.

The *Frango* had been upon a whaling expedition to Western Australia immediately prior to the time the vessel entered the port of Baltimore early in December 1937, where the cargo of whale oil taken from whales caught upon that expedition was discharged, except for 6 tons of damaged low grade whale oil and 20 tons of sperm oil not salable in the United States, which were retained on board for discharge in Norway. When the vessel arrived at Baltimore, the crew consisted of the ship's officers and operating members only, the whaler crew having been sent back to Sandefjord, Norway, from Capetown, South Africa.

Whaling expeditions always start and end in Norway. Upon the *Frango's* return trip to Norway, in preparation of another voyage to the whaling waters adjacent to Western Australia, the plaintiff contracted to carry 4,017 long tons of whale oil to Manchester, England, for the Archer-Daniels-Midland Co. of New York City. The president of the plaintiff corporation consulted with customs officials concerning the carriage of the oil to Manchester and received permission to transport the cargo. Consequently, the owner's oath and the master's oath of American cargo vessel clearing without passengers were filed. The certificate of registry numbered 54 issued at New York in 1930 was cancelled, and a new temporary registry numbered 124 was issued December 22, 1937. The service indicated therein was "Whale Fisheries." The outward foreign manifest, issued December 24, 1937, indicated that there was cargo on board destined for Manchester, England. The record of foreign clearances discloses that the *Frango* cleared for Manchester and Sandefjord on Friday, December 24, 1937. After discharging its cargo of whale oil in Manchester, England, the vessel proceeded to Sandefjord, Norway, where it discharged the 6 tons of whale oil and 20 tons of sperm oil still on board from the prior whaling expedition.

The vessel then underwent the usual repairs after a whaling expedition to prepare it for another voyage. The repairs so made at that time were subjected to an assessment of duty of 50 per centum ad valorem, under section 466 [1] of the Tariff Act of 1930, when the *Frango* again entered the port of New York in 1938, after having been upon another whaling expedition to Western Australian waters.

---

[1] SEC. 466. EQUIPMENT AND REPAIRS OF VESSELS.

Sections 3114 and 3115 of the Revised Statutes, as amended by the Tariff Act of 1922, are amended to read as follows:

"SEC. 3114. The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel *documented* under the laws of the United States *to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade,* shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country; and if the owner or master of such vessel shall willfully and knowingly neglect or fail to report, make entry, and pay duties as herein required, such vessel, with her tackle, apparel, and furniture, shall be seized and forfeited. * * *."
[Italics not quoted.]

Counsel for the plaintiff contends that repairs to vessels engaged in the fisheries, however documented, are not subject to duty; and that the *Frango* was not documented under the laws of the United States to engage in foreign trade. Counsel for the Government, on the other hand, contends that the *Frango* was not only intended to be, but actually was, employed in foreign trade and therefore comes within the provisions of section 466.

In the case of *United States* v. *Western Operating Corp.*, *supra*, the appellate court pointed out that section 466 does not expressly provide for the assessment of duty upon the cost of equipment and repairs incurred in a foreign port by a registered vessel but that—

\* \* \* The statute is specific to the cost of such items incurred in a foreign port by vessels documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Furthermore, *no duty is assessed by the terms of the statute upon the cost of equipment and repairs incurred in a foreign port by a vessel documented under the laws of the United States to be employed "in the whale fisheries,"* and appellant concedes in its brief that while vessels may be enrolled and licensed pursuant to law for both the coasting trade and the fisheries (46 U. S. C., sec. 263), vessels documented solely for the purpose of engaging in the fisheries are excluded from the provisions of section 466. [Italics not quoted.]

As to Government's contention that, as the *Frango* was actually employed in foreign trade, the vessel comes within the provisions of section 466, the appellate court in the *Western Operating Corp.* case, *supra*, pointed out the following:

It clearly appears that the foreign trade and the whale fishery, from a legal standpoint and otherwise, are essentially different employments, and that *the intention of Congress down through the years has been that the employment of vessels should be indicated by the documents possessed by them.* [Italics not quoted.]

Prior to the enactment of section 280, a register was the lawful documentation for a vessel engaged in the foreign trade, and an enrollment and license was the lawful documentation for a vessel engaged in the whale fishery. Section 280, however, made a register a lawful documentation under the laws of the United States for a vessel engaged in the whale fishery.

The exception thereby provided in favor of such a vessel, and the possession by her of a register for the purpose of engaging in the whale fishery, did not, however, "*ipso facto*" establish her right to engage in foreign trade, but, on the contrary, established only her right to engage in the whale fishery. Therefore, the *Ulysses*, which was so documented, was excluded from the provisions of section 466, *supra*.

In the incorporated record, Dominick Manfredi testified that a certificate of registry never discloses whether or not a vessel is registered for the purpose of engaging in foreign trade. If intended for such trade, the witness stated that there appears on the register after the word "Service," freight, passenger, etc. Mr. McDermott of the Clearance Division of the Custom House there testified that he would not accept a clearance of a vessel holding a certificate of registry with the service entitled "Whale Fishery," if the vessel were clearing for

the foreign trade, and that when a vessel is confined to a specific trade, the clearance officer has no authority to deviate from that trade.

Under the United States Code, title 46, § 11, registries are permitted to be issued to American-built vessels belonging wholly to citizens of the United States which are to engage "only in trade with foreign countries" and with other certain specified places, and 46 U. S. C. § 221 declares that registered vessels, and no others, shall be deemed vessels of the United States. Also, 46 U. S. C. § 251 declares that vessels enrolled and with a license in force, and no others, shall be deemed vessels of the United States entitled to the privileges of vessels employed in the coasting trade or fisheries. It is apparent that under the foregoing statutes registries are permitted to be issued only to such vessels as are engaged in foreign trade, and enrollments only to such vessels of the United States as are employed in the coasting or fisheries. However, 46 U. S. C. § 280, relating to papers in the whale fishery, declares that:

All vessels which may clear with registers for the purpose of engaging in the whale fishery shall be deemed to have lawful and sufficient papers for such voyages, securing the privileges and rights of registered vessels, and the privileges and exemptions of vessels enrolled and licensed for the fisheries.

The provisions of section 466 of the Tariff Act of 1930, *supra*, are restricted to such vessels of the United States as are *documented* under the laws of the United States to *engage* in the foreign or coasting trade, or a vessel intended to be employed in such trade. A vessel documented to carry on a fishery or whale fishery is not *documented* to engage in the foreign or coasting trade. However, there is a wide difference between the documentation of a vessel and the undertaking, as in the instant case, of the delivery of a cargo of whale oil. Bearing in mind that a vessel with a register in the service of whale fisheries has the privileges and exemptions of vessels enrolled and licensed for the fisheries, it seems clear that irrespective of such documentation, 46 U. S. C. § 310 permits such trade, when the master or owner obtains permission for such purpose from the collector of the district where such vessel may be, previous to her departure. Permission was obtained by the owner of the collector at the port of New York to carry the whale oil to Manchester, England, prior to the departure of the vessel. The court is of the opinion that the law is clear that such transportation of whale oil does not, *ipso facto*, change the documented service of the vessel from the whale fisheries to foreign trade, nor does it change the intention. The facts as disclosed by the record establish that there was no intention of the master of the *Frango* to change the service of the vessel, inasmuch as subsequent to the discharge of the cargo at Manchester, the vessel proceeded to Sandefjord, Norway, to be prepared for another whaling expedition upon which it thereafter embarked, and upon the completion thereof

returned to the United States. Such movements of the vessel manifested clearly the intention of the master and the owner to employ the vessel in the service under which it was documented. As a matter of fact, if there had been any intention of the owner to change the service, such intention was otherwise manifested before the work in question had been performed upon the vessel, as at that time the cargo already had been discharged, and the vessel was in preparation for another whaling voyage.

It is clear from the evidence before the court that the *Frango* was not documented to engage in the foreign trade, nor was it the intention of the owner or master of the vessel that she should engage in a service other than for which the registry was issued.

For the reasons stated and following the incorporated case, judgment will be entered in favor of the plaintiff directing the collector to reliquidate the entry and refund all duties taken upon the repairs in question, in accordance with law.